UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| vs. | ) | Judge |
| | ) | |
| FUNDS IN THE AMOUNT OF $42,000 | ) | |
| IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| Defendant, *In Rem*. | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE, *IN REM***

COMES NOW, before this honorable Court, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to the provisions of Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Fed. R. Civ. P. Supp.") G(2), respectfully, to bring this Verified Complaint for Forfeiture *In Rem*.

Plaintiff hereby alleges as follows:

**Nature of the Action**

1.  This is a civil action brought to forfeit property seized by the United States government for violations of federal law that provide for the seizure, forfeiture, and disposal of certain property to the United States.

2.  This action is an *in rem* legal proceeding against property, not against an individual, to determine rights in the property that are conclusive against the entire world.

3.  This civil action *in rem* is brought to forfeit property pursuant to the provisions of 21 U.S.C. § 881(a)(6), 18 U.S.C. §§ 981(a)(1)(A), and 981(a)(1)(C), because it: (1) was involved in, (2) was used or intended to be used to facilitate, (3) was furnished or intended to be furnished in

exchange for, or (4) is proceeds (or property) traceable to, a "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7)(A).

4. Based upon the facts and circumstances herein set forth, Plaintiff prays: (1) that process issue for an arrest warrant *in rem* for the subject property; (2) that notice be given to all parties to appear and show cause why forfeiture should not be decreed; (3) that this Court enter a judgment of forfeiture to the United States; and (4) that this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

5. This complaint is verified by the attached Verification of Drug Enforcement Administration ("DEA") Task Force Officer Arnold Martinez ("TFO Martinez"), which is fully incorporated herein.

### The Defendant *In Rem*

6. The Defendant *in rem* consists of the following property:

- $42,000 (forty-two thousand dollars) in United States currency.   (Hereinafter, the "subject property").

7. The subject property was seized on December 10, 2018, by the DEA Group 24 Task Force ("Group 24") operating out of Amtrak® Union Station in Chicago, Illinois ("Union Station"), to which TFO Martinez is assigned.

8. The subject property is currently in the custody of the United States Marshals Service.

### Jurisdictional Statement

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 because this action is commenced by the United States of America, and pursuant to 28 U.S.C. § 1355(a) because this is an action for forfeiture.

10. This Court has *in rem* jurisdiction over the subject property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395(a) (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to forfeiture occurred in this district, and pursuant to 28 U.S.C. § 1395 (via 28 U.S.C. § 1355(b)(1)(B)) because the subject property is located in this district.

**Basis for Forfeiture**

12. The subject property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

13. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering enterprises" under 18 U.S.C. § 1952 – "specified unlawful activate[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

14. The subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from "proceeds traceable" to "dealing in a controlled substance" under 18 U.S.C. § 1961(1)(A) and "interstate and foreign travel or transportation in aid of racketeering

enterprises" under 18 U.S.C. § 1952 – "specified unlawful activit[ies]" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

**Summary of Facts**

15. On December 10, 2018, members of DEA Group 24 conducted a consensual interview and search at Union Station, which led to the discovery and seizure of the subject property from Elrashid Ali ("Ali"), who was traveling on a one-way trip ticket via Amtrak® train numbers 49/5 from New York, New York to Emeryville, California with a connecting train in Chicago, Illinois.

16. A police canine certified by the State of Illinois, the North American Police Work Dog Association ("NAPWDA"), and Vapor Wake K9 demonstrated as a positive alert on the subject property, indicating the presence of one of five odors he is trained to detect.

17. Based upon the experience of DEA Group 24 officers, including TFO Martinez, and the totality of the circumstances further described below, the subject property was seized for forfeiture.

**Facts**

I.  Union Station Interdiction and Discovery of the Subject Property

    A.  Overview of DEA Group 24 at Union Station

18.  This Complaint describes an investigation conducted by members of DEA Group 24 at Union Station, to which TFO Martinez is a member.

19.  The primary responsibility of Group 24 is to investigate crimes involving the use of public train stations, commercial airlines, and shipping companies to transport illegal drugs and drug proceeds.

20.  Based upon the experience of Group 24 investigators and in similar investigations across the United States, it is common knowledge that cities in the mid-west and east coast are demand

locations for illicit drugs.

21. States such as Arizona, California, and Colorado are considered source locations due to their close proximity to the border of Mexico and established drug transportation routes.

22. Person(s) involved in the illegal drug trade, often hire couriers to transport drugs and/or proceeds from the sale of drugs by utilizing public train stations, commercial airlines, and shipping companies.

23. In an effort to identify and disrupt potential drug and/or money couriers related to drug organizations and criminal syndicates, investigators utilize a variety of resources, including confidential informants, suspicious travel itineraries, other law enforcement agencies, and prior knowledge of criminal activity or intelligence.

24. Couriers often travel with minimal luggage and routinely attempt to board at the last possible moment.

25. Drug and/or money couriers utilize these techniques in an attempt to conceal their identities from law enforcement and minimize their exposure to commercial airlines and passenger railroad services.

      B.  Travel Itinerary and Suspicious Behavior of Amtrak® Passenger Ali

26. On December 10, 2018, law enforcement officers assigned to Group 24, were alerted to the suspicious travel itinerary of Amtrak® passenger Ali.

27. Ali was traveling on a one-way ticket via Amtrak® train numbers 49/5 from New York, New York to Emeryville, California with a connecting train in Chicago, Illinois.

28. The tickets were purchased with cash in the amount of $608 on November 29, 2018.

29. Based upon the training and experience of Group 24 investigators, illegal drug couriers often purchase train tickets with cash.

30. Group 24 investigators also know Emeryville, California, and the central California region in particular, to be a known source area for illegal drug trafficking.

31. Group 24 investigators also know that those who transport illegal drugs, or the proceeds of illegal drug trafficking, often keep them on their person or in accompanying bags or suitcases.

32. Group 24 investigators sought to conduct a consensual interview of Ali prior to him departing Union Station aboard Amtrak® train number 5.

33. Agents obtained a photograph of Ali prior to the interview.

34. At approximately 1:40 p.m., TFO Martinez, along with TFOs Eddy Sobkowiak and Kenneth O'Brien, arrived at Union Station's Amtrak® train number 5, car 532, in an attempt to interview Ali.

35. Investigators were dressed in civilian clothing with no weapons, radios, or other law enforcement paraphernalia visible.

36. Shortly thereafter, a man who matched the description of Ali boarded car 532 and entered room 004.

C. Interview of Ali

37. TFO Martinez approached Ali at room 004, identified himself as a law enforcement officer by displaying his credentials and badge, and asked to speak with him.

38. TFO Martinez informed Ali that he was not under arrest and that he was not in any trouble.

39. Ali stated that he understood and agreed to speak with TFO Martinez.

40. When TFO Martinez requested to see Ali's boarding pass and identification, Ali produced a boarding pass and a passport stating that he had lost his wallet.

41.  TFO Martinez noted the information contained on the documents and immediately returned them to Ali.

42.  When asked where he was traveling, Ali stated that he was going to California.

43.  When asked for the purpose of his travel, Ali stated he was returning from New York where he had been for two days on business.

44.  When asked how he traveled to New York, Ali stated that he flew.

45.  When TFO Martinez asked Ali if he had any checked luggage, he replied "[n]o" and told agents that his bags were with him in his room.

46.  When asked, Ali further stated that he had packed his own luggage.

47.  When TFO Martinez asked Ali if he was carrying any weapons or illegal drugs, he answered "[n]o" and stated that he does not do drugs or have any drugs with him.

48.  When TFO Martinez asked Ali if he was carrying any large amounts of currency, he stated that he had money with him.

49.  When TFO Martinez asked Ali how much money he had he did not answer.

50.  When TFO Martinez asked Ali if he was carrying less than $10,000 he did not answer.

51.  When TFO Martinez asked Ali if he was carrying more than $20,000 Ali replied, "[y]es."

52.  TFO Martinez asked Ali where the currency was located and Ali stated that it was located in his coat pocket.

D.  Consensual Search and Discovery of the Subject Property

53. In order to verify his statements, TFO Martinez asked Ali for permission to see the money and/or search his person as well as his luggage.

7

54. Ali removed two black plastic bags from his coat pocket and handed them to TFO Sobkowiak.

55. When TFO Martinez asked about the U.S. Currency, Ali stated that the amount might be about $20,000 to $22,000.

56. When TFO Martinez asked Ali if he had $10,000 in each bag, Ali stated "[y]es."

57. When TFO Martinez asked Ali the reason for carrying so much cash, Ali stated that he had inherited property from his father.

58. When TFO Sobkowiak told Ali the currency appeared to be more than $20,000, Ali stated that he had told the agents each bag contained about $20,000.

59. When TFO Martinez asked Ali if he had any documentation such as deposit slips, bank withdrawal receipts, or any electronic documentation as to the source of the currency, Ali stated that he did not have any documents with him at the time.

60. TFO Martinez advised Ali that agents were going to detain the subject property for further investigation, including an examination by a canine.

61. TFO Martinez informed Ali that he could accompany agents to the DEA office located within Union Station to continue the interview and/or if he wanted a receipt or one could be mailed to him if or he didn't want to miss his train.

62. Ali asked if agents could mail a receipt to his California home because he could not miss his train.

63. At this time, Ali stated that he was not involved in any criminal activities and asked to explain the source of the money.

64. Ali then stated that he inherited his father's property located in Sudan, Africa and that his brother sold the property.

65. Ali further stated that his brother gave Ali's inheritance money to a man to deliver to Ali in New York.

66. When TFO Martinez asked Ali the name of the man who delivered the money, Ali did not know the name and had to look in his phone.

67. At this time, Ali provided only the first name "Altayb" and stated that he did not know "Altayb's" full name.

68. When TFO Martinez asked Ali where he met "Altayb", Ali replied the Marriott.

69. Ali then showed TFO Martinez a hotel bill from the Marriott Courtyard located at 145-11N Conduit Ave., Jamaica, New York, near JFK airport for the period of December 7, 2018 to December 9, 2018.

70. The subject property consisted of 420 one hundred-dollar bills.

71. Agents found no contraband in Ali's carry-on luggage.

   E.  Canine Examination of the Subject Property

72. At approximately 1:45 p.m., Officer Crowley utilized his certified narcotics detection canine, Gander, to examine the subject property.

73. Gander is currently five years old and Officer Crowley is Gander's second handler.

74. Gander is certified with by the State of Illinois (most recently on August 30, 2018), the NAPWDA (most recently on April 4, 2018), and Vapor Wake K9 (most recently on April 6, 2018).

75. Gander was last certified prior to this investigation by the State of Illinois on August 30, 2018.

76. Gander is trained and certified to detect five odors: (1) marijuana, (2) cocaine, (3) heroin, (4) ecstasy, and (5) methamphetamine.

77. If at any time during a search Gander smells one of the five odors he is trained to detect, Gander will alert with an active/passive alert at the area where he smells the odor.

78. Gander's search/sniff of the subject property was conducted on December 10, 2018 aboard Amtrak® train number 5, at the upper level of car 532 near room 004.

79. Officer Crowley observed Gander sniff the air, focus his stare, and sit near two black plastic bags containing the subject funds located on the floor.

80. Officer Crowley recognized this behavior as a positive alert indicating Gander smelled one of the five orders he is trained to detect.

81. Officer Crowley did not recognize this behavior from Gander as indicating an interest in any other items, bags, or persons in the area.

F. Seizure of the Subject Property for Forfeiture

82. At this time, Group 24 investigators seized the subject property for forfeiture per DEA guidelines governing asset forfeiture.

83. Ali left with no further incident, however, later that day he contacted the Amtrak® Police Department at which time he described the subject funds as his brother's money contradicting his earlier claim that the money belonged to him.

84. Ali then contacted DEA and stated that the subject funds were for a wedding.

II. Additional Investigative Details

A. Travel History of Ali

85. The following train ticket information was provided by Amtrak®, demonstrating a suspicious pattern of last-minute, one-way travel over a condensed period of time, indicative of a courier involved in the illegal drug trade:

    1) A one-way ticket was purchased for travel by Ali from New York, New York to

Emeryville, California with a connecting train in Chicago, Illinois, departing November 19, 2018

and arriving November 20, 2018, less than one month prior to Ali's current trip.

III.  Administrative Forfeiture Proceedings

86. DEA initiated administrative proceedings against the subject property by mailing a

Notice Letter and Notice of Seizure to all potential interest holders by certified mail.

87. In response to this notice, Ali filed an online claim to the subject property with DEA on

February 16, 2019.

88. On February 21, DEA referred this matter to the United States Attorney's Office in

Chicago to initiate judicial forfeiture proceedings.


**First Cause of Action**

89. Plaintiff repeats and realleges the averments in paragraphs one through 89 as though fully

set forth herein.

90. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 21

U.S.C. § 881(a)(6) because it: (1) was "furnished or intended to be furnished" in exchange for a

controlled substance or listed chemical in violation of Title II of the Comprehensive Drug Abuse

Prevention and Control Act of 1970, 21 U.S.C. §§ 801, *et seq*. (the "Controlled Substances

Act"), (2) represents "proceeds traceable" thereto, or (3) was "used or intended to be used to

facilitate" a violation thereof. *See* 21 U.S.C. § 881(a)(6).

91. Pursuant to 21 U.S.C. § 881(a)(6), "[a]ll moneys, negotiable instruments, securities, or

other things of value furnished or intended to be furnished by any person in exchange for

a controlled substance or listed chemical in violation of [21 U.S.C. §§ 801-904], all proceeds

traceable to such an exchange, and all moneys, negotiable instruments, and securities used or

intended to be used to facilitate any violation of [thereof]" are subject to forfeiture to the United States. *Id*.

## Second Cause of Action

92. Plaintiff repeats and realleges the averments in paragraphs one through 89 as though fully set forth herein.

93. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, "dealing in a controlled substance" a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

94. Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

95. Pursuant to 18 U.S.C. § 1956(a)(3):

> Whoever, with the intent—
>   (A) to promote the carrying on of specified unlawful activity;
>   (B) to conceal or disguise the nature, location, source, ownership, or control of
>       property believed to be the proceeds of specified unlawful activity; or
>   (C) to avoid a transaction reporting requirement under State or Federal law,
>   conducts or attempts to conduct a financial transaction involving property
>   represented to be the proceeds of specified unlawful activity, or property used to
>   conduct or facilitate specified unlawful activity, shall be fined under this title or
>   imprisoned for not more than 20 years, or both…

96. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

97. The list of offenses under § 1961(1)(A) are further defined as "racketeering activity,"

and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" *See* 18 U.S.C. § 1961(1)(A).

### Third Cause of Action

98.     Plaintiff repeats and realleges the averments in paragraphs one through 89 as though fully set forth herein.

99.     For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it: (1) was "involved in," or (2) is "property traceable" to, a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, or 1960; to wit, interstate and foreign travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952, a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

100.   Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of 1956, 1957 or 1960 of [Title 18], or any property traceable to such property," is subject to forfeiture to the United States.

101.   Pursuant to 18 U.S.C. § 1956(a)(3):

> Whoever, with the intent—
>  (A) to promote the carrying on of specified unlawful activity;
>  (B) to conceal or disguise the nature, location, source, ownership, or control of
>       property believed to be the proceeds of specified unlawful activity; or
>  (C) to avoid a transaction reporting requirement under State or Federal law,
> conducts or attempts to conduct a financial transaction involving property
> represented to be the proceeds of specified unlawful activity, or property used to
> conduct or facilitate specified unlawful activity, shall be fined under this title or
> imprisoned for not more than 20 years, or both.

102.   The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

103. The list of offenses under § 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. § 1961(1)(A).

104. Section 1952(a) describes the following as an indictable act:

> Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
> (1) distribute the proceeds of any unlawful activity; or
> (2) commit any crime of violence to further any unlawful activity; or
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

105. Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]". *See* 18 U.S.C. § 1952(b).

**Fourth Cause of Action**

106. Plaintiff repeats and realleges the averments in paragraphs one through 89 as though fully set forth herein.

107. For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to "dealing in a controlled substance," a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

108. Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(C)(2018).

109. The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

110. The list of offenses under section 1961(1)(A) are further defined as "racketeering

activity," and include "any act or threat involving . . . dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year[.]" *See* 18 U.S.C. § 1961(1)(A).

### Fifth Cause of Action

111.   Plaintiff repeats and realleges the averments in paragraphs one through 89 as though fully set forth herein.

112.  For the reasons set forth above, the subject property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952 ([i]nterstate and foreign travel or transportation in aid of racketeering enterprises), a "specified unlawful activity" under 18 U.S.C. § 1961(1)(A) (by way of 18 U.S.C. § 1956(c)(7)(A)).

113.  Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c))" is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(C)(2018).

114.  The term "specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of [Title 18]." *See* 18 U.S.C. § 1956(c)(7).

115.  The list of offenses under section 1961(1)(A) are further defined as "racketeering activity," and include "any act which is indictable under . . . section 1952[.]" *See* 18 U.S.C. § 1961(1)(A).

116.  Section 1952(a) describes the following as an indictable act:

> Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—

15

    (1) distribute the proceeds of any unlawful activity; or

    (2) commit any crime of violence to further any unlawful activity; or

    (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity[.]

117.  Section 1952(b) further describes "unlawful activity" as, "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)[.]" *See* 18 U.S.C. § 1952(b).

## Prayer for Relief

WHEREFORE, based upon the aforementioned facts and circumstances, Plaintiff, United States of America, by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. Supp. G(3)(b), respectfully, prays:

1)  That process issue for an arrest warrant *in rem* for the subject property, which Plaintiff will execute in accordance with 28 U.S.C. § 1355(d) and Fed. R. Civ. P. Supp. G(3)(c);

2)  That due notice be given to all parties to appear and show cause why forfeiture of the subject property to the United States in accordance with the claims herein set forth should not be decreed;

3)  That this Court enter a judgment of forfeiture for the subject property to the United States; and

4)   That this Court grant Plaintiff all other relief as it may deem just and proper, together with the costs and disbursements of this action.

DATED this 13th day of May 2019.

JOHN R. LAUSCH, JR.
United States Attorney
For the Northern District of Illinois

By:     *Jeffrey R. Borup*
          JEFFREY R. BORUP
          Assistant United States Attorney
          219 South Dearborn Street, 5th Floor
          Chicago, Illinois 60604
          Desk: (312) 697-4087
          Email: jeffrey.borup@usdoj.gov

Attorneys for Plaintiff
United States of America

State of Illinois            )
                             )  ss.
County of Cook               )
                             )

## VERIFICATION IN SUPPORT
## OF COMPLAINT FOR FORFEITURE *IN REM*

I, Arnold Martinez, declare under penalty of perjury the following:

1. I am a Task Force Officer with the Drug Enforcement Administration ("DEA") and have been so employed since May 2014.

2. My duties and responsibilities as a Task Force Agent with DEA involve investigation of alleged violations of the Controlled Substances Act, Title 21 of the United States Code.

3. I have read the foregoing complaint in this matter and the facts alleged are true and correct to the best of my knowledge and belief.

4. This statement is based upon my own personal knowledge as well as information I have received from other agents, persons, and documents; it does not include each and every fact known to me concerning this investigation, but is submitted for the limited purpose of establishing a basis to believe the property identified is subject to forfeiture.

Executed on this 13th of May 2019, in Chicago, Illinois.

ARNOLD MARTINEZ
Task Force Officer
Drug Enforcement Administration